# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| JOHN DIXON WALKER, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:18-cv-00955-JHE |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION[1]

Plaintiff John Dixon Walker, Jr. ("Walker") seeks review, pursuant to 42 U.S.C. § 405(g), § 205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his application for a period of disability and disability insurance benefits ("DIB"). (Doc. 1). Walker timely pursued and exhausted his administrative remedies. This case is therefore ripe for review under 42 U.S.C. § 405(g). The undersigned has carefully considered the record and, for the reasons stated below, the Commissioner's decision is **AFFIRMED.**

## I. Factual and Procedural History

Walker filed an application for a period of disability and DIB on June 19, 2012, alleging he became unable to work beginning May 17, 2011. (270-76). The Agency initially denied Walker's application, after a hearing, the Administrative Law Judge ("ALJ") denied Walker's claim on May 16, 2014. (Tr. 6-16). After the Appeals Council denied review, (tr. 1-4), Walker

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge conduct any and all proceedings, including trial and the entry of final judgment. (Doc. 15).

appealed to this court. *See Walker v. Social Security Administration, Commissioner*, Case No. 4:15-cv-01611-AKK at doc. 1. On February 25, 2016, United States District Judge Abdul Kallon granted the Commissioner's request for entry of judgment and remand under Sentence Four of 42 U.S.C. § 405(g). (Tr. 538-42).

On remand, the ALJ held supplemental hearings on September 26, 2016, and January 18, 2017. (Tr. 509-37). On August 23, 2017, the ALJ again denied Walker's claim. (Tr. 486-501). Walker again sought review by the Appeals Council, but it denied his request on May 9, 2018. (Tr. 479-85). On that date, the ALJ's decision became the final decision of the Commissioner. On April 21, 2018, Walker initiated this action. (*See* doc. 1).

Walker was forty-eight on his last hearing date. (Tr. 513). Walker has a high school education and previous work as an HVAC service technician. (Tr. 513-14, 520).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this Court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

---

[2] In general, the legal standards applied are the same whether a claimant seeks DIB or Supplemental Security Income ("SSI"). However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

---

[3] The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

3

(1) whether the claimant is currently employed;
(2) whether the claimant has a severe impairment;
(3) whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];
(4) whether the claimant can perform his or her past work; and
(5) whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

### IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Walker met the insured status requirements of the Social Security Act through his date last insured ("DLI") of December 31, 2016 and had not engaged in substantial gainful activity between his alleged onset date of May 17, 2011 and his DLI. (Tr. 491). At Step Two, the ALJ found Walker has the following severe impairments: degenerative disc disease ("DDD") and carpal tunnel syndrome. (Tr. Tr. 491). At Step Three, the ALJ found that, through his DLI, Walker did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 493).

Before proceeding to Step Four, the ALJ determined Walker's residual functioning capacity ("RFC"), which is the most a claimant can do despite his impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that, through his DLI, Walker had the RFC

> to perform sedentary work as defined in 20 CFR 404.1567(a) except unskilled work with no climbing of ropes, ladders, or scaffolds; no work at unprotected heights or with hazardous machinery; occasional stooping, crouching, crawling, or kneeling; frequent handling bilaterally; and frequent interaction with co-workers, supervisors, and the general public.

(Tr. 494).

At Step Four, the ALJ determined that, through the date last insured, Walker was unable to perform any past relevant work. (Tr. 499). At Step Five, the ALJ found that, based on Walker's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Walker could perform. (Tr. 499-500). Therefore, the ALJ determined Walker has not been under a disability and denied his claim. (Tr. 500-01).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported by substantial evidence or if improper legal standards were applied, "[t]his does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court, however, "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Walker raises four arguments why his claim was improperly denied. First, he argues the ALJ inappropriately weighed the opinion evidence of Walker's treating physician, Dr. Pat Herrera. (Doc. 9 at 20). Next, Walker contends the ALJ erred by affording substantial weight to the testimony of a vocational examiner ("VE") because the hypothetical the ALJ posed failed to

5

include all of Walker's limitations. (*Id.*). Third, Walker says the ALJ failed to credit his pain testimony. (*Id.* at 20-21). Finally, Walker argues the ALJ erred by failing to give substantial weight to the testimony of another VE. (*Id.* at 21). The undersigned addresses each argument below.

## A. The ALJ Properly Evaluated Opinion Evidence

### 1. Dr. Herrera

Walker argues that, as a treating physician, Dr. Herrera's opinion should have been accorded controlling weight. A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citing *Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

The record evidence shows that Dr. Herrera treated Walker during two distinct periods: (1) March 2012 to May 2013, (tr. 85, 89-90, 93-94,108-12, 375-381), and (2) 2015 and later, (tr. 747-

48).[4]  Dr. Herrera saw Walker as a new patient complaining of back pain on March 19, 2012.  (Tr. 381).  Walker complained that it hurt to sit or stand.  (*Id.*).  On examination, Walker's back was tender to palpitation.  (*Id.*).  Dr. Herrera prescribed a number of medications, including Norco for Walker's severe pain.  (*Id.*).  Walker returned to Dr. Herrera on April 19, 2012, seeking refills.  (Tr. 380).  Dr. Herrera prescribed Neurotonin and re-upped Walker on Norco.  (*Id.*).  Less than a month later, on May 3, 2012, Walker saw Dr. Herrera again, reporting that the Neurotonin did not help.  (Tr. 379).  Although Dr. Herrera's form contains a location to record a patient's reports of pain on a scale from one to ten, he did not fill out that portion for any of these three visits.  On the next visit, May 31, 2012, Walker reported 5/10 pain, (tr. 378), and on July 2, 2012, Walker said his pain was 6/10, (tr. 377).  Subsequent treatment notes from this first period indicates Walker's pain was 4/10 on August 1, 2012, 3/10 on August 31, 2012, 6/10 on September 26, 2012 (though this record also indicates Walker was experiencing left ear pain), and between 5/10 and 7/10 on every subsequent visit from October 25, 2012, to May 14, 2013.  (Tr. -183).  Elsewhere in the record are Dr. Herrera's prescriptions over this time period for Norco and Neurotonin.  (Tr. 85, 89-90, 93-94,108-12, 150-165).  With respect to Walker's complaints of pain, Dr. Herrera's notes only reflect Walker's subjective reports.

On November 27, 2012, Dr. Herrera completed two forms sent by Walker's counsel.  (Tr. 751-56).  The first of these was a questionnaire letter supplied by counsel containing paragraphs of information followed by check-boxes for "Yes" or "No."  (Tr. 751-54).  Asked whether he had treated Walker "with respect to various injuries to his lower back, that he suffered while working for his employer . . . on or about May 9, 2011," Dr. Herrera checked "Yes."  (Tr. 751).  After

---

[4] The Commissioner incorrectly states this second treatment period was after Walker's DLI, mistakenly concluding that date was in December 2013.  (Doc. 12 at 8).

concurring with counsel's synopsis of his medical history, (tr. 751-53), Dr. Herrera indicated he agreed with the statement: "In your opinion, with a reasonable degree of medical certainty, has John Walker suffered a permanent/partial impairment to his low back, as a result of suffering those low back injuries . . . that causes him to have constant severe pain, which is made worse by activities he tries to engage in?" (Tr. 753). Dr. Herrera also checked "Yes" when asked if Walker was "permanently and totally disabled from any gainful employment . . . ." (Tr. 753-54). Dr. Herrera filled out the second form provided by counsel, a "Clinical Assessment of Pain." (Tr. 755-56). In this form Dr. Herrera indicated all of the following: "Pain is present to such an extent as to be distracting to adequate performance of daily activities or work"; physical activity such as walking, standing, bending, stooping, and the like "[g]reatly increased pain and to such a degree as to cause distraction from task or total abandonment of work"; Walker's medications could impact him because "[s]ignificant side effects may be expected which may limit the effectiveness of work duties or the performance of everyday tasks, e.g., driving"; pain and/or medication would impact Walker's ability to perform his previous work in the sense that "[p]ain and/or drug side effects can be expected to be severe and to limit effectiveness due to distraction, inattention, drowsiness, etc."; pain would be "a significant element" in Walker's life, notwithstanding it may be less intense in the future; and pain treatments would have no appreciable effect on Walker's pain. (Tr. 755-56).

 Walker apparently did not see Dr. Herrera again for several years—or, at least, there are no records to indicate he did. On February 4, 2015, Dr. Herrera ordered an X-ray of Walker's hips and pelvis. (Tr. 747). According to the interpreting radiologist, Dr. Ken Harper, the results of this exam showed minimal lower fact and SI joint DJD (i.e., degenerative joint disease), but no joint space narrowing or proximal femoral abnormalities were visible, nor were soft tissue

8

abnormalities. (*Id.*). The same day, Walker had an X-ray of his lumbar spine, also showing minimal lower facet DJD and minor endplate changes in several thoracolumbar elements. (Tr. 748). The record does not contain any records from Dr. Herrera following these X-rays.[5]

The ALJ assigned little weight to Dr. Herrera's opinion that Walker's pain and the side effects of his medication would significantly limit him, as he found it was inconsistent with the evidence in the case. (Tr. 498). To the extent Dr. Herrera's opinion supported that Walker is "permanently and totally disabled," the ALJ rejected that conclusion as a decision reserved for the commissioner. (Tr. 498).

The back injury Walker contends results in his disability occurred on the job, and the ALJ relied in part on records from Walker's worker's compensation claim to reject Dr. Herrera's opinion. (Tr. 495-96). Specifically, following Walker's injury and conservative treatment with anti-inflammatories and physical therapy, Walker sought treatment from Dr. Daniel Ryan at Northeast Orthopedic Clinic, complaining of significant mid-lumbar back pain radiating across the buttocks, with left leg and posterior thigh pain if Walker sat or stood for too long. (Tr. 354). Dr. Ryan stated Walker had been out of work "because they don't really have light duty for him since his injury." (*Id.*). Dr. Ryan performed a number of tests and found normal motor functions with no symptoms on internal or external rotation of the hip, but back pain produced by a straight leg raise on the left. (*Id.*). X-rays showed no significant bony abnormality, with adequate maintenance of disc space height, no osteophytes, and no evidence of fracture. (*Id.*). MRIs with and without contrast revealed some desiccation of the discs in the lower lumbar area, but "nothing

---

[5] The ALJ described a number of treatment notes from 2016 and attributed them to Dr. Herrera. (Tr. 497). The referenced treatment notes show visits to Dr. Thomas Lackey, not Dr. Herrera. (*See* tr. 731-45). Walker testified he stopped seeing Dr. Herrera and had been seeing Dr. Lackey since May 2016. (Tr. 516-17).

9

really traumatic"; there were also minor disc bulges that could produce mild foraminal stenosis. (*Id.*). Dr. Ryan's plan was to obtain a myelogram CT, an EMG/NCS (i.e., an electromyogram and nerve conduction study) of the left leg. (*Id.*). Dr. Ryan put Walker on a steroid dose pack, anti-inflammatories, and muscle relaxers; he also continued Walker's out-of-work status. (*Id.*). If no significant abnormality were revealed, Dr. Ryan indicated Walker would "need a course of work conditioning and a return to work." (*Id.*).

After Walker's CT scan, he returned to Dr. Ryan on August 29, 2011. (Tr. 353). The CT scan showed "some asymmetric left sided disc bulge at L4-5 that does produce some foraminal stenosis at that level," which Dr. Ryan found consistent with Walker's back and leg pain. (Tr. 353, 366-67). However, Dr. Ryan did not feel it was an operative lesion. (Tr. 353). Dr. Ryan's plan was to get Walker a series of epidurals and put him on aggressive physical therapy, with a progress checkup in two weeks. (*Id.*). If Walker was not ready to return to work, Dr. Ryan indicated he would need to undergo work conditioning and a functional capacity evaluation ("FCE"); in the meantime, however, Dr. Ryan put Walker on a series of lifting, pushing, pulling, and postural restrictions. (*Id.*).

At Walker's two-week checkup, Dr. Ryan noted the epidural had not been effective and that Walker was "not really better than baseline." (Tr. 352). Dr. Ryan continued physical therapy and ordered work conditioning and an FCE. (*Id.*). Walker submitted to the FCE on November 1, 2011.[6] (Tr. 361-65, 468-75). As to his history, Walker reported "fair" results from physical therapy. (Tr. 364). The primary evaluator, Sheral Serafini, MSPT, found Walker self-limited and did not work to his maximum ability due to pain. (Tr. 363). Nevertheless, she found he possessed

---

[6] The FCE erroneously indicates Walker had been injured at work on the same date. (Tr. 364).

the physical abilities to work an eight-hour day. (*Id.*). Walker's unexpected results came from inconsistent physiological changes normally associated with maximum effort—i.e., he did not have maximum muscle recruitment during handling tests, and self-limited citing pain. (*Id.*). However, Walker did show physiological signs indicating inability to perform frequent bending. (*Id.*). Walker reported pain at 4-5/10 and shifted uncomfortably during intake. (Tr. 364). Post-test, Walker's pain was 7/10. (Tr. 365). The lowest pain level Walker reported over the last 30 days was 2-3/10, and the highest was 7-8/10. (*Id.*). Ultimately, Ms. Serafini concluded Walker performed within medium work requirements, but would have difficulty in a job that required frequent to constant sitting or standing without the ability to change positions as needed. (Tr. 363). Ms. Serafini determined Walker had a lumbar spine impairment of 5%, a conclusion with which Dr. Ryan agreed. (Tr. 428). She also indicated restrictions should be imposed consistent with Walker's demonstrated physical abilities. (Tr. 469, 475). These included occasionally lifting 30 pounds and frequently lifting 20 pounds (waist to shoulder), occasionally lifting 40 pounds and frequently lifting 30 pounds (floor to waist), occasionally lifting 30 pounds and frequently lifting 20 pounds (floor to shoulder), with infrequent kneeling, only occasional standing, climbing, and squatting, and frequent kneeling and reaching. (Tr. 475).

Following the FCE, Walker returned to Dr. Ryan on December 1, 2011. (Tr. 351). Dr. Ryan noted Walker's PPI (permanent partial impairment) was 5%.[7] (*Id.*). Dr. Ryan found Walker had significant radicular discomfort and some foraminal stenosis per the MRI and CT myelogram, but stated "at this point if he's up and walking he is able to relieve the majority of his discomfort" (though sitting remained a problem). (*Id.*). Dr. Ryan discussed the potential for surgery, but

---

[7] Walker objects to the PPI as a general matter, (*see* doc. 9 at 35-36), but does not connect that objection to anything in the ALJ's opinion.

Walker was uncomfortable with the prospect. (*Id.*). Dr. Ryan stated "we are going to return him to work under the conditions of the FCE which will limit his lifting and carrying and may well take him out of his current job." (*Id.*). Finally, Dr. Ryan indicated diagnostic studies should be repeated if Walker's symptoms worsened, and that he would see Walker back PRN (i.e., as needed). (*Id.*). On December 1, 2011, Dr. Ryan signed a return to work form indicating Walker had recovered sufficiently to return to light work, subject to the FCE's restrictions.[8] (Tr. 467).

Walker extensively restates the record evidence and concludes it establishes that the ALJ should have assigned controlling weight to Dr. Herrera. (Doc. 9 at 29-43). What Walker does not account for, however, is that there is a conflicting opinion from a treating physician in the record that the ALJ found to be supported by the evidence.[9] The ALJ would have had to provide less than substantial weight to either Dr. Ryan's opinion that Walker could work or Dr. Herrera's opinion that Walker could not work. He resolved this conflict by finding Dr. Herrera's opinion was less consistent with the evidence and Dr. Ryan's opinion was supported by the evidence.[10] As the ALJ noted, Dr. Herrera's notes are sparse and do not indicate disabling findings, (tr. 496, 498); instead, they generally serve as stenography for Walker's subjective reports of pain, without any test results or description of Dr. Herrera's impressions. Further, the ALJ found the 3-year lapse in Walker's treatment between 2013 and 2016 did not support Dr. Herrera's opinion. (Tr. 497). And as to Dr. Herrera's finding regarding disabling medication side effects, the ALJ found Walker had

---

[8] On April 2, 2012, consistent with Dr. Ryan's prediction, Walker's employer indicated there was no light duty work available for Walker. (Tr. 430).

[9] Walker also argues the opinion of VE Dr. William A. Crunk bolsters Dr. Herrera's opinion. (Doc. 9 at 39). The ALJ assigned that opinion little weight, (tr. 496-97); as discussed further below, his decision to do so was not erroneous.

[10] To the extent Walker argues the ALJ cherrypicked the record, (*see* doc. 9 at 33), the undersigned finds the ALJ's discussion was thorough and adequately summarized the record as a whole.

denied medication side effects on August 16, 2016. (Tr. 498, 743). While other parts of the record evidence might be consistent with Dr. Herrera's opinion, Walker's argument for error comes down to requesting the undersigned reweigh the evidence before the ALJ. This is not the court's role. *See Walden*, 672 F.2d at 838. As to Dr. Herrera's conclusion that Walker was disabled, the ALJ correctly noted this is a determination reserved for the Commissioner that merits no deference. *Pate v. Comm'r, Soc. Sec. Admin.*, 678 F. App'x. 833, 834 (11th Cir. 2017) (citing 20 C.F.R. § 404.1527(d)).

Two issues raised by Walker warrant some additional discussion. First, Walker argues that the sheer number of times Dr. Herrera prescribed pain medications to him is evidence that Dr. Herrera's opinions merit deference. (Doc. 9 at 32-33) (citing tr. 89-90, 93-94, 109-09, 111-12, 150-65, 185-86, 188, 375, 398-402, 406). It is unclear how it follows that a medical provider's opinions, otherwise inconsistent with the record, are supported by the fact that the medical provider acted consistent with his opinions. Second, Walker contends the objective diagnostic tests establish abnormalities supporting his pain. (Doc. 9 at 33-35). Among the indicia of abnormalities is a consultation with Dr. James G. White ordered by Dr. Herrera for Walker's complaints of left leg pain. (Tr. 169). Dr. White saw Walker on May 28, 2012. (*Id.*).Dr. White reviewed the films from Walker's worker's compensation proceeding and concluded Walker had a left lateral herniation causing impingement of the left nerve root exiting. (*Id.*). Dr. White referred to Walker's CT scan showing "a fairly obvious left foraminal disc bulge causing left size foraminal narrowing and impingement upon the exiting nerve root."[11] (*Id.*). While Dr. White's report and other evidence in the record is consistent with the existence of a condition that could support Dr.

---

[11] Dr. White also referenced, but did not comment on the validity of, the FCE stating Walker could return to work with restrictions. (Tr. 170).

Herrera's opinion that Walker was totally disabled, it does not follow that the record supports that that condition imposed the limitations Dr. Herrera indicated (i.e., the conclusion to which the ALJ assigned little weight). *See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (noting "the mere existence of . . . impairments does not reveal the extent to which they limit [a claimant's] ability to work"); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) ("mere diagnosis [of a condition] says nothing about the severity of the condition").

Because Dr. Herrera's opinion was inconsistent with the record, the ALJ had good cause to discount it. Therefore, the ALJ did not commit reversible error when he assigned Dr. Herrera's opinion little weight.

### 2. Dr. Crunk

Walker also argues the ALJ should have placed substantial weight on the deposition testimony of VE Dr. William A. Crunk. (Doc. 9 at 49). Dr. Crunk's deposition was taken on June 22, 2013, as part of Walker's worker's compensation case. (Tr. 496, 710-726). As part of his testimony, Dr. Crunk opined that Walker would "not be able to maintain an 8-hour day, he would not be able to be there on a routine and regular basis, persistence and pace would be a problem. And he's just not capable of working." (Tr. 712-13).

The ALJ did not, as Walker states, ignore Dr. Crunk's opinion, (*see* doc. 9 at 49). In fact, the ALJ discussed it and assigned it little weight. (Tr. 496-97). As with Dr. Herrera, the ALJ found this was an opinion on an issue reserved for the Commissioner. (Tr. 496). This was not erroneous. *See Pate*, 678 F. App'x. at 834. Further, he found Dr. Crunk's opinion that Walker could not work to be inconsistent with the record evidence showing minimal abnormalities, objective test results, and treating physician Dr. Ryan's opinion that Walker could perform light work with restrictions. (Tr. 496-97). Further, since Dr. Crunk was not a treating physician, his

opinion was not entitled to any particular weight. *See Crawford*, 363 F.3d at 1160. Accordingly, the ALJ did not err in giving Dr. Crunk's deposition testimony less than substantial weight.

**B. The ALJ Appropriately Assessed Walker's Subjective Reports**

The Eleventh Circuit "has established a three part 'pain standard' that applies when a claimant attempts to establish disability through his or her own testimony of pain or other subjective symptoms. The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). Subjective testimony supported by medical evidence satisfying the standard is sufficient to support a finding of disability. *Id.* However, the ALJ may still make a credibility determination on the claimant's statements about the intensity and effect of that pain. *See Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995); *Hogard v. Sullivan*, 733 F. Supp. 1465, 1469 (M.D. Fla. 1990). The ALJ's adverse determination must be supported by "explicit and adequate reasons," *Holt*, 921 F.2d at 1223, and substantial evidence, *see Foote*, 67 F.3d at 1561-62. An ALJ's clearly articulated credibility determination will not be disturbed if supported by substantial evidence. *Petteway v. Comm'r of Soc. Sec.*, 353 F. App'x 287, 288 (11th Cir. 2009).

When evaluating the credibility of a claimant's statements regarding the intensity, persistence, or limiting effects of her symptoms, the ALJ considers all evidence, objective and subjective. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2016 WL 1119029 at * 3-10. The ALJ may consider the nature of a claimant's symptoms, the effectiveness of medication, a claimant's method of treatment, a claimant's activities, and any conflicts between a claimant's statements and the rest of the evidence. *See* 20 C.F.R. §§ 404.1529(c)(3), (4), 416.929(c)(3), (4); SSR 16-3p, 2016 WL 1119029 at * 3-10. If an ALJ discredits a claimant's subjective complaints,

"he must articulate explicit and adequate reasons for doing so." *Wilson v. Comm'r of Soc. Sec.*, 284 F.3d 1219, 1225 (11th Cir. 2002). "[I]f a credibility determination is inadequate, a remand to the agency for further consideration is the proper remedy." *Carpenter v. Astrue*, No. 8:10-CV-290-T-TGW, 2011 WL 767652 (M.D. Fla. Feb. 25, 2011). *See also Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 835 (11th Cir. 2011) (retreating from *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986), based on the prior precedent rule, and remanding to the agency).

At his first hearing, Walker testified he spent 8-12 hours lying down or reclining during the day. (Tr. 38). Walker testified his pain was a 7-8/10 without medication, but with medication it was reduced to 4-6/10. (*Id.*). Walker indicated his medication made him drowsy and that he could not work with them. (Tr. 38-39). Walker testified his pain made it difficult to concentrate or lift or hold objects. (Tr. 42-43). Walker echoed this testimony at his third hearing, indicating his pain medication reduced his overall pain to a 4-5/10, but without the medication it would be a 7-8/10. (Tr. 519). Walker again testified his pain medication made him sleepy. (*Id.*). Walker testified that he could feed the dogs, clean his kitchen, drive to various places, occasionally cook dinner, and fish two to four times a week. (Tr. 515-16).

Walker's sole argument is that his subjective reports of pain should have been credited because of the "herniation of his L4-5 level of his lumbar spine." (Doc. 9 at 48). This misunderstands the pain standard. Notwithstanding Walker has a condition that "could reasonably be expected to give rise to the alleged pain" he complained of, the ALJ was still entitled to make a credibility finding regarding his pain. *See Foote*, 67 F.3d at 1561-62; *Moore*, 405 F.3d at 1213 n.6. Further, while Walker states it is "undisputed that claimant has constant severe pain from the low back injuries that prevents him from being gainfully employed," referring back to Dr.

16

Herrera's opinion, (doc. 9 at 48), Walker's ability to work is clearly disputed, and, as discussed above, the ALJ did not err by rejecting Dr. Herrera's opinion.

In fact, the ALJ contrasted Walker's reports of pain (which are certainly consistent throughout the record) with other evidence indicating Walker's reports did not reflect the intensity, persistence, and limited effects of his impairments. (Tr. 495). Specifically, he found Walker's failure to seek treatment for several years did not support disabling pain. (Tr. 496). The gap in treatment was an appropriate factor for the ALJ to consider, given that Walker offered (and offers) no explanation for it. *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011) (citing SSR 96–7p at 7) (an ALJ may draw an adverse inference from a claimant's lack of medical treatment, but not before considering the claimant's explanation for his failure to seek treatment). Further, and separate from Walker's failure to seek treatment, the ALJ found Walker's reports of disabling pain inconsistent with Dr. Ryan's opinion that he could perform light work, and Walker's description of his daily activities. (Tr. 498-99). Walker's testimony at the hearing was also inconsistent with his function report indicating that he does not prepare meals, (tr. 331), and has not engaged in any hobbies—including fishing—since his injury, (tr. 339). The ALJ appropriately considered that inconsistency. *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938 (11th Cir. 2011). The ALJ's evaluation of Walker's subjective reports was supported by substantial evidence, and he articulated "explicit and adequate reasons" for discounting Walker's reports. *Holt*, 921 F.2d at 1223. Walker is not entitled to reversal on this ground.

### C. The ALJ's Question to the Vocational Examiner Was Not Erroneous

Walker's last argument is that the ALJ's hypothetical question to the VE did not include all of his impairments. (Doc. 9 at 43). At the third hearing, the ALJ posed the following question to VE Debra Civils:

17

> I'd like you to assume a hypothetical person the same age, same education, same past work as the claimant. Further assume this person is limited to sedentary unskilled work with no climbing of ropes, ladders, or scaffolds. No work at unprotected heights with hazardous machinery. No more than occasional stooping, crouching, crawling, or kneeling. No more than frequent handling bilaterally. No more than frequent interactions with co-workers and supervisors and the general public. Can that person perform the claimant's past job?

(Tr. 520). The VE denied such a hypothetical person could, but then indicated there were other jobs that person could perform. (Tr. 520-21).

In order for a VE's testimony "to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999). Walker argues the ALJ's question here did not do so, but effectively he is simply rearguing that his subjective reports of severe pain should have been credited. The ALJ was not required to include limitations based on Walker's subjective complaints when those complaints were not supported by the record, as discussed above. *Crawford*, 363 F.3d at 1161. Since the ALJ did not err in rejecting Walker's pain testimony, it follows that he did not err by failing to include limitations based on that testimony in his hypothetical.

## VI. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner of Social Security denying Walker's claim for a period of disability and DIB is **AFFIRMED**, and this action is **DISMISSED WITH PREJUDICE**. A separate order will be entered.

DONE this 30th day of September, 2019.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE